IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-20053-01 JWL |
| ) | |
| ALCIDES ROMERO CORRALES ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____) | |

**MEMORANDUM AND ORDER**

In April 2009, Alcides Romero-Corrales was indicted for illegally re-entering the United States after having been deported subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).[1] In September 2009, Mr. Romero-Corrales filed a motion requesting that the Court address in a limine order whether he may present a defense predicated upon a particular provision of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading

---

[1] 8 U.S.C. § 1326(a) states in relevant part:

> [A]ny alien who (1) has been denied admission, excluded, deported, or removed…and thereafter, (2) enters, attempts to enter, or is at any time found in, the United States…shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(b) provides for enhanced criminal penalties for such aliens in the event that their removal from the United States "was subsequent to a conviction for commission of an aggravated felony."

Treatment or Punishment ("the CAT").[2] The CAT prohibits a signatory nation from returning or extraditing an individual to a particular nation if there are "substantial grounds for believing that he would be in danger of being subjected to torture." The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted* Dec. 10, 1984, art. 3, § 1, G.A. Res. 39/46, Annex, 39 U.N. GAOR Sup. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984), 23 I.L.M. 1027 (1984). Mr. Romero-Corrales apparently contends he would be subjected to torture if the United States were to deport him back to his home nation of Honduras[3] and he therefore moves this Court to issue an order setting forth whether he may present such a defense under the CAT. For the reasons set forth below, the Court concludes that the CAT cannot serve as a defense to the criminal charge of illegal re-entry and that Mr. Romero-Corrales therefore may not introduce such evidence.

## I. Background

On April 18, 1988, President Reagan signed the CAT. In October 1990, the Senate adopted a resolution consenting to the Convention, yet did so on the stated

---

[2] In candor to the Court, Mr. Romero-Corrales in his motion in limine indicated doubt regarding whether the CAT would provide a defense to the present criminal proceedings. Nonetheless, Mr. Romero-Corrales intends to raise the defense if viable, and therefore requests that the Court address the matter so the parties may understand how to properly proceed.

[3] Mr. Romero-Corrales failed to provide any factual basis for concluding he might be subjected to torture if deported to Honduras. However, the Court concludes that a defense based upon the CAT would not be successful even if such a factual basis had been provided.

understanding that the CAT was not self-executing. *Mironescu v. Costner*, 480 F.3d 664, 666 (4th Cir. 2007) (citing 136 Cong. Rec. S17486-01, S17492 (1990)).[4]  *See also Auguste v. Ridge*, 395 F.3d 123, 132 (3rd Cir. 2005).  As a result of this understanding, Congress enacted the Foreign Affairs Reform and Restructuring Act ("FARRA") to implement the treaty.  *Mironescu*, 480 F.3d at 666 (discussing the history of the CAT and FARRA); *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003) (same).  The FARRA provides that:

> It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.
>
> FARRA, Pub. L. No. 105-227, div. G., § 2242(a), 112 Stat. 2681-822 (codified at 8 U.S.C. § 1231 note) (1998).

The FARRA also contains a provision limiting the jurisdiction of the federal courts to hear claims asserted under the CAT:

---

[4] The distinction between treaties that are self-executing and treaties that are not relates to whether and how the obligations contained within the treaty become domestic law.  A self-executing treaty is one which "operates of itself without the aid of any legislative provision."  *Medellin v. Texas*, 128 S. Ct. 1346, 1356 (citing *Foster v. Neilson*, 2 Pet. 253, 314 (1829), *overruled on other grounds*, *U.S. v. Percheman*, 7 Pet. 51 (1833)).  It is considered "equivalent to an act of the legislature."  *Id*.  If a treaty is not self-executing, it "can only be enforced pursuant to legislation to carry [it] into effect."  *Id*. (citing *Whitney v. Robertson*, 124 U.S. 190, 194 (1888)).  In other words, it will become domestic law only if Congress enacts implementing legislation.

> [N]o court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act.

*Id*. § 2242(d)

The federal courts of appeals have interpreted this provision as prohibiting the consideration of CAT or FARRA claims unless reviewing a final order of removal or perhaps considering a habeas petition challenging an extradition decision. *See Saint Fort*, 329 F.3d at 201 (holding that an individual who is statutorily ineligible for review of his final order of removal may nonetheless assert a violation of the CAT in a habeas petition). *But see Mironescu*, 480 F.3d at 674 (concluding FARRA prohibits the courts from considering a habeas petition challenging the decision to extradite on the grounds extradition would violate the obligations contained in the CAT and FARRA). *See also Kiyemba v. Obama*, 561 F. 3d 509, 514-15 (D.C. Cir. 2009) and *U.S. v. Casaran-Rivas*, 311 Fed. Appx. 269, 271, n.1, 2009 WL 325633, at *2 (11th Cir. Feb. 11, 2009) (unpublished opinion).

**II.  Analysis**

Mr. Romero-Corrales moves this Court for a limine order addressing whether he may present a defense to the charge of unlawful re-entry based upon the CAT. The defendant bears the burden of establishing any defenses, and may "present a defense only when the 'theory is supported by some evidence and the law.'" *U.S. v. Portillo-Madrid*, 292 Fed. Appx. 746, 749, 2008 WL 4183915, at *2 (10th Cir. Sept. 12, 2008) (unpublished opinion) (citing *U.S. v. Al-Rebaki*, 454 F.3d 1113, 1123 (10th Cir. 2006)). Moreover, if the assertion of a particular defense is not factually supported, the district court may issue a limine order, excluding any evidence relating to the particular defense. *See U.S. v. Portillo-Madrid*, 292 Fed. Appx. at 748, 751 (upholding the district court's issuance of an order excluding evidence of a duress defense at a trial for illegal re-entry into the United States). As discussed in greater detail below, the Court has considered possible defenses based upon the obligations in the CAT as well as affirmative defenses potentially applicable in cases of illegal re-entry where concerns are raised regarding torture. However, the Court concludes that the factual circumstances asserted by the parties do not warrant admitting evidence of any such defenses.

A. Jurisdiction to Consider CAT Claims

5

As the CAT is not a self-executing treaty, the federal courts may consider CAT claims only in conformity with the limitations contained in the FARRA.[5] *Mironescu*, 480 F.3d at 677; *Raffington v. Cangemi*, 399 F.3d 900, 903 (8th Cir. 2005); *Auguste*, 395 F.3d at 133 n.7. As the Eighth Circuit has explained, with a non-self-executing treaty, "there is no direct right of action for violation of the treaty, only for violation of any domestic law implementing the treaty." *Raffington*, 399 F.3d at 903. Thus, Mr. Romero-Corrales must seek relief under the FARRA, rather than the CAT itself. *See Auguste*, 395 F.3d at 132.

However, the FARRA prohibits courts from considering claims based on the obligations contained in the CAT unless as part of a review of a final order of removal. Indeed, in *U.S. v. Casaran-Rivas*, the Eleventh Circuit addressed whether this statutory prohibition extends to an allegation of likely torture when asserted as a defense to a criminal prosecution for unlawful re-entry. 311 Fed. Appx. 269, 272, 2009 WL 325633, at *3 (11th Cir. Feb. 11, 2009) (unpublished). The defendant alleged that his conviction for unlawful re-entry violated the CAT because he fled from Colombia after guerillas kidnapped his brother and father and set fire to their house, and he sought temporary shelter in the United States only after he first sought asylum in Panama and Costa Rica, and was chased by Columbians even there. *Id.* at

---

[5] As discussed above, the provisions of a treaty that is not self-executing become domestic law only when Congress implements them through domestic legislation–here, the FARRA. Until such time as domestic legislation is passed to implement the treaty, the provisions merely constitute international obligations. Once Congress enacts legislation, relief is sought under the domestic legislation, rather than the treaty. *Auguste*, 395 F.3d at 132.

6

270. The court concluded the defendant could not succeed with such a defense, because the CAT is not self-executing, and the implementing legislation—the FARRA—divests the courts of jurisdiction to hear such claims unless part of the review of a final order of removal under 8 U.S.C. § 1252. *See Id.* at 271-72, n.1. The Court agrees with the reasoning of the Eleventh Circuit and therefore concludes that the FARRA precludes the exercise of jurisdiction over claims based specifically upon the CAT in a criminal proceeding such as this.

### B. Defenses to Prosecution Under § 1326

An individual is guilty of unlawful re-entry under 8 U.S.C. § 1326(a) when he (1) is an alien; (2) who was arrested and deported; (3) who thereafter voluntarily reentered, attempted to reenter, or was found in the United States; (4) without the permission of the Attorney General. *U.S. v. Martinez-Morel*, 118 F.3d 710, 713 (10th Cir. 1997). Although the government must establish that the defendant acted intentionally in reentering the United States, "'no intent to break the law–whether characterized as 'specific intent' or 'general criminal intent'–must be proved.'" *U.S. v. Hernandez-Hernandez*, 519 F.3d 1236, 1239 (10th Cir. 2008) (citing *U.S. v. Miranda-Enriquez*, 842 F.2d 1211, 1212 (10th Cir. 1988)), *cert. denied*, 129 S. Ct. 162 (2008). Thus, the Tenth Circuit has held there is no defense to an action under § 1326 where the defendant mistakenly believes he was lawfully within the United

States.[6] *Miranda-Enriquez*, 842 F.2d at 1213. Likewise, courts have held that there is no defense to an unlawful re-entry charge on the basis that the alien later received amnesty or was otherwise deemed to be lawfully residing within the United States after the illegal entry. *See U.S. v. Ramos-Quirarte*, 935 F.2d 162, 163 (9th Cir. 1991) (per curiam) (receipt of Agricultural Worker status after re-entry into the United States not a defense to a charge for unlawful re-entry after deportation); *U.S. v. Guiterrez-Alba*, 929 F. Supp. 1318, 1324 (D. Hawaii 1996) (receipt of amnesty after illegal re-entry not a defense to a criminal charge under § 1326), *aff'd*, 128 F.3d 1324 (9th Cir. 1997). The later grant of lawful resident status may not be construed either as permission of the Attorney General to re-enter the United States under the exception set forth in § 1326,[7] or as a justification for the criminal action in unlawfully re-entering after deportation. Similarly, it would seem that Mr. Romero-Corrales's claim that the United States cannot lawfully deport him to Honduras might serve as a basis for concluding he may lawfully remain in the United States, but cannot additionally justify his criminal conduct in unlawfully re-entering the United States.

Nevertheless, several appellate courts have treated the common law defenses

---

[6] A mistaken belief of lawful entry cannot serve as a defense because criminal intent is not a part of the crime. *Miranda-Enriquez*, 842 F.2d at 1213.

[7] The fact that an alien is granted lawful resident status after illegal re-entry cannot be construed as constituting permission by the Attorney General to the re-entry because the statute requires that such permission be obtained before the alien enters the United States. *See Guiterrez-Alba*, 929 F. Supp. at 1324.

8

of necessity and duress as applicable in an action for illegal re-entry. *See U.S. v. Aguirre-Torres*, 3 Fed. Appx. 852, 854, 2001 WL 95148, at *2 (10th Cir. Feb. 5, 2001) (unpublished opinion) (necessity); *U.S. v. Crown*, 12 Fed. Appx. 59, 61, 2001 WL 682289, at *1 (2nd Cir. June 18, 2001) (unpublished opinion) (necessity); *U.S. v. Portillo-Vega*, 478 F.3d 1194, 1201 (10th Cir. 2007) (duress). The allegations of Mr. Romero-Corrales regarding the likelihood of torture upon return to Honduras might be construed as assertions of the defenses of necessity or duress. Seeking to act cautiously, the Court will therefore consider the applicability of both defenses as well. Although the "distinctions between duress and necessity" have been blurred by modern case law, the Court will nonetheless consider the separate elements of each as described by the Tenth Circuit. *See Portillo-Vega*, 478 F.3d at1197 (quoting *U.S. v. Bailey*, 444 U.S. 394, 409 (1980)).

1. Necessity

The defense of necessity may "excuse an otherwise illegal act if (1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct, causal relationship is reasonably anticipated to exist between the defendant's action and the avoidance of harm." *Aguirre-Torres*, 3 Fed. Appx. at 854 (citing *U.S. v. Meraz-Valeta*, 26 F.3d 992, 995 (10th Cir. 1994), *overruled on other grounds by U.S. v. Aguirre-Tello*, 353 F.3d 1199 (10th Cir. 2004)). To prove there

were no legal alternatives, "a defendant must show he was confronted with…a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts." *Id.* Therefore, if reasonable, legal alternatives to illegal re-entry existed, the necessity defense must fail.

For example, in *Aguirre-Torres*, the defendant claimed he had no choice but to illegally re-enter the country because he believed his handicapped and ailing mother was in need of his help. 3 Fed. Appx. at 854. The district court granted a motion in limine to exclude evidence relating to his necessity defense, and the Tenth Circuit upheld the court's action on the grounds that there were "reasonable, legal alternatives" available to the defendant. *Id.* (quoting *Meraz-Valeta*, 26 F.3d at 995). The court reasoned that even if the defendant subjectively believed he had no choice but to illegally re-enter the United States, his subjective belief was not determinative of whether there in fact were legal alternatives available. *Id.* at 854. *See also Crown*, 12 Fed. Appx. at 61. (finding the lower court properly precluded the defendant from asserting a necessity defense on the grounds that he was HIV positive and there were no medical services available in his country for persons with HIV, because there were lawful alternatives to illegal re-entry into the United States).

Likewise, Mr. Romero-Corrales cannot rely upon the defense of necessity in these circumstances. He has failed to allege the existence of any necessity that would have compelled him to enter the United States, other than an apparent assertion that he would likely be subjected to torture upon returning to Honduras. However, even if

the potential for torture motivated his re-entry into the United States, there existed a reasonable, lawful alternative to re-entering the United States: seeking refuge in another nation. *See U.S. v. Portillo-Madrid*, 292 Fed. Appx. 746, 750, n.3, 2008 WL 4183915, at *3 (10th Cir. Sept. 12, 2008) (unpublished opinion) (noting with a duress defense that the defendant admitted he was not prevented from attempting to seek refuge elsewhere).

2.  Duress

The following must be proven by a preponderance of the evidence to establish an affirmative defense of duress: "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm." *Portilllo-Vega*, 478 F.3d at 1197. In addition, because the offense of illegal re-entry is considered a continuing offense, there must also be evidence that the defendant made a "bona fide effort to surrender...as soon as the claimed duress...had lost its coercive force." *Id*. at 1201. Thus, the court will consider whether the defendant attempted to contact authorities after re-entry occurs and the threat dissipates. *Id*. *See also Portillo-Madrid*, 292 Fed. Appx. at 749-51.

Mr. Romero-Corrales has failed to allege facts indicating a defense of duress might succeed. Duress shares with the defense of necessity a requirement that there not have been a reasonable, legal alternative to violating the law. Even if Mr.

Romero-Corrales fled to the U.S. for fear of torture in Honduras, he has not established that refuge could not have been sought elsewhere. Therefore, the Court concludes Mr. Romero-Corrales cannot rely upon such a defense either.

### III.  Conclusion

For the foregoing reasons, the Court concludes that Mr. Romero-Corrales cannot assert in this criminal proceeding a defense predicated upon the CAT or FARRA, and additionally cannot assert the affirmative defenses of necessity or duress. Thus, the defendant may not present any evidence relating to such defenses. *See Portillo-Madrid*, 292 Fed. Appx. at 751. (upholding the district court's issuance of a limine order excluding evidence of a duress defense).

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Romero-Corrales may not present any evidence concerning a defense based upon the obligations contained in the Convention Against Torture, nor any evidence to establish the affirmative defenses of necessity or duress.

**IT IS SO ORDERED** this 23rd day of September, 2009.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

12